UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES M. SIMPSON,

                                        Petitioner,

            v.                                                    9:20-CV-1363
                                                                  (GLS/TWD)
NEW YORK STATE DEPARTMENT
OF CORRECTIONS,[1]

                                        Respondent.

_____

APPEARANCES:                            OF COUNSEL:

JAMES M. SIMPSON
Petitioner, pro se
18-B-0295
Cayuga Correctional Facility
P.O. Box 1186
Moravia, NY 13118

GARY L. SHARPE
United States Senior District Judge

**DECISION and ORDER**

**I.      INTRODUCTION**

        Petitioner seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254.  Dkt. No.

1, Petition ("Pet.").  The petition was initially filed in the United States District Court for the

Eastern District of New York and, on November 4, 2020, transferred to this Court.  Dkt. No. 2,

Transfer Order; Dkt. No. 3.

        On November 5, 2020, the action was administratively closed due to petitioner's failure

_____

        [1] Petitioner named the New York State Department of Corrections as the respondent. Pet. at 1. The proper respondent, however, is the superintendent of the facility in which petitioner is incarcerated.  *See* Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts ("If the petitioner is currently in custody under a state-court judgment, the petition must name as respondent the state officer who has custody.").  In light of this technical error, the Clerk is directed to terminate the New York State Department of Corrections as a named respondent and, instead, substitute Gerald Jones, Superintendent of Cayuga Correction Facility.

to properly commence it.  Dkt. No. 4, Administrative Closure Order.  Petitioner was advised that if he desired to pursue this action he must so notify the Court and either (1) pay the filing fee of five dollars ($5.00), or (2) submit a completed, signed, and properly certified in forma pauperis (IFP) application, within thirty (30) days of the filing date of that Order.  *Id*. at 2.

On November 16, 2020, the Court received the statutory filing fee.  Dkt. No. 5, Letter; Dkt. Entry dated 11/16/20 (identifying receipt information for filing fee transaction).  The case was reopened.  Dkt. No. 6.

## II.    THE PETITION

Petitioner was convicted in 2018, pursuant to a guilty verdict in Broome County, for first degree attempted assault, second degree criminal possession of a weapon, and second degree assault.  Pet. at 1-2.  Petitioner's direct appeal of his criminal conviction is still pending.  *Id.* at 2-3.

However, this petition does not challenge his criminal conviction.  Instead, it challenges petitioner's continued confinement at Cayuga Correctional Facility (hereinafter "Cayuga") during the COVID-19 pandemic.  Pet. at 5-12.  Specifically, petitioner argues that he is entitled to habeas relief because (1) he is living in "[n]egligent, [h]azardous and unhealthful conditions" because the "COVID-19 pandemic in prison constituted potentially unsafe life-threatening condition[s] endangering inmates' reasonable safety depending on each inmates['] degree of vulnerability to virus," and Cayuga received inmates from Ulster Correctional Facility (hereinafter "Ulster") before their COVID-19 test results were reported (*id.* at 5-7); (2) the transfer of patients from Ulster before knowing whether or not they were positive for COVID-19 represented a "[d]ereliction of duty," (*id.* at 7-8); (3) Cayuga violated

2

the "state social distancing order . . . [by] running school program[s] with the class room air system . . . not being sanitize[d] and [keeping inmates] . . . in close spaces," (*id.* at 8-10); and (4) medical malpractice for the "[m]edical staff . . . signing off on allowing [an inmate] . . . to enter [the] population . . . which put all of [them] at risk and now [they] have a large spike," (*id.* at 10-12).

Petitioner indicates that he has filed facility grievances, as well as a motion pursuant to New York Criminal Procedure Law § 460.50.  Pet. at 6-10.  Petitioner cites to the National Emergencies Act, 50 U.S.C. §1601 *et seq.*, and several district court cases apparently in an effort to argue that the exhaustion requirement is inapplicable to him given his claims.  *Id.* at 13-14.

## III.    DISCUSSION

This petition was brought pursuant to 28 U.S.C. § 2254.  State prisoners must bring challenges both to the execution of a sentence and to underlying convictions under section 2254, which governs petitions filed by "a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *accord Cook v. N.Y. State Div. of Parole*, 321 F.3d 274, 278 (2d Cir. 2003).

Here, petitioner is a state prisoner seeking immediate release from custody based on his allegedly unconstitutional conditions of confinement, namely, the possibility of increased exposure to, and potential deadly health consequences from, COVID-19.  *See* Pet. "Although it appears that the Second Circuit has not explicitly considered the issue with respect to state prisoners, the Second Circuit has specified that conditions of confinement

3

claims by federal prisoners relate to the execution of their sentences."  *Harrison v. Wolcott*, No. 6:20-CV-6270, 2020 WL 3000389, at *2 (W.D.N.Y. June 4, 2020) (citing *Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008) (explaining that the Second Circuit has "long interpreted § 2241 as applying to challenges to the execution of a federal sentence including such matters as . . . prison conditions")); *see Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001) (concluding that § 2241 challenges to the execution of a federal sentence include prison conditions).  "There is no reason to conclude differently in the context of a state prisoner's conditions-based claim under Section 2254."  *Llewellyn v. Wolcott*, No. 1:20-CV-0498, 2020 2525770, at *3 n.6 (W.D.N.Y. May 18, 2020).  This same logic has been followed by other district courts throughout this circuit considering COVID-19-related claims similar to those presently advanced by the petitioner.  *See Harrison*, 2020 WL 3000389, at *2; *Griffin v. Cook*, No. 3:20-CV-0589, 2020 WL 2735886, at *4 (D. Conn. May 26, 2020) (citing cases); *Elleby v. Smith*, No. 1:20-CV-2935, 2020 WL 2611921, at *2-3 (S.D.N.Y. Apr. 9, 2020).  Accordingly, as petitioner is challenging the execution of his state-imposed sentence, the present petition must be brought pursuant to § 2254.  *See* 28 U.S.C. § 2254(a); *Cook*, 321 F.3d at 277-78.

An application for a writ of habeas corpus may not be granted until a petitioner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1)(A), (B)(i), (ii).

To satisfy the exhaustion requirement, a petitioner must do so both procedurally and substantively.  Procedural exhaustion requires that a petitioner raise all claims in state court

4

prior to raising them in a federal habeas corpus petition.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  Substantive exhaustion requires that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted).  In other words, petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

Here, petitioner contends that he has exhausted his state court remedies by filing facility grievances and his CPL § 460.50.  However, these actions are insufficient.  Petitioner attached the Appellate Division's decision denying his CPL § 460.50 motion, which explained that petitioner's "[a]pplication . . . for [an] order staying execution of [his] judgment of [conviction] . . . pending appeal and for release on recognizance on bail," was denied.  Pet. at 29.  This motion did not seek the same relief requested in this petition, nor allege the same claims currently pending before the Court.  Therefore, "the state courts [have not had] one full opportunity to resolve any constitutional issues [because petitioner has failed to] invok[e] one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

Furthermore, the vehicles through which petitioner attempted to exhaust his claims are inappropriate.  While petitioner cites to a federal statute and several recent decisions,

presumably to illustrate how he has exhausted his remedies, those are all inapposite.[2]  In fact, two of the three cases are instructive on how an inmate, seeking to challenging his confinement based on the current COVID-19 crisis, should exhaust his claims.[3]  Specifically, both *Slater* and *Elleby* outline that petitioners should pursue a "CPLR Article 70 [petition whereby] state prisoners may petition for a writ of habeas corpus in state court to inquire in the cause of his or her detention and for deliverance."  *Slater v. Keyser*, No. 1:20-CV-3012, 2020 WL 4016759, at *4 (S.D.N.Y. July 16, 2020) (internal quotation marks and citations omitted); *accord Elleby v. Smith*, No. 1:20-CV-2935, 2020 WL 2611921, at *4 (S.D.N.Y. May 22, 2020) (explaining that it was "recently noted that an inmate concerned about COVID-19 is free to bring a petition for a writ of habeas corpus in the New York State Supreme Court, pursuant to Article 70 of New York's Civil Practice Law and Rules, on the ground that the conditions of his/her confinement are unlawful and that many have been granted by the justices of the New York State Supreme Court") (internal quotation marks and citations omitted).  Therefore, it is clear that petitioner has failed to properly exhaust his claims.

Furthermore, there is no basis on the record before this Court to conclude that there is

---

[2]  The Coronavirus Aid, Relief, and Economic Security Act (hereinafter "CARES Act") "provides, in part, home confinement authority to the Bureau of Prisons during the period beginning on the date on which the President declared a national emergency under the National Emergencies Act . . . with respect to the COVID-19 pandemic, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau." *Phea v. Pfeiffer*, No. 2:20-CV-0283, 2020 WL 1892427, at *1 (E.D. Cal. Apr. 16, 2020).  Liberally construing the petition, it appears this is the ground petitioner believes provides him the remedy of release.  "However, this form of relief through the CARES Act is available to *federal* prisoners incarcerated at Bureau of Prisons facilities, of which petitioner is not." *Id.*  Therefore, the statute is irrelevant to the decision at hand.

[3]  The third decision which petitioner cites involves an immigration detainee challenging her mandatory detention pending removal proceedings. *See Malam v. Adducci*, 452 F. Supp. 3d 643 (E.D.N.Y. 2020).  Accordingly, the petitioner seeks habeas relief pursuant to a different statute, § 2241. *Id.* at 648-51.  The exhaustion requirements are different between these two habeas provisions. *See Harrison v. Wolcott*, No. 6:20-CV-6270, 2020 WL 300389, at *2 (W.D.N.Y. June 4, 2020) (explaining that the statutory exhaustion requirement of § 2254 and the judge-made exhaustion requirement of § 2241 may be applied differently given the present pandemic).  Therefore, this case is distinguishable and not instructive.

an absence of available state corrective process (*e.g*., where there is no further state proceeding for a petitioner to pursue) or circumstances exist that render that state court process ineffective to protect petitioner's rights (*e.g*. where further pursuit would be futile). *See* 28 U.S.C. § 2254(b)(1)(B)(i), (ii); *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000).  To the extent petitioner argues otherwise, such claims are meritless.

As discussed in *Slater*, "courts across New York State have considered and resolved petitions seeking release from state custody in connection with the COVID-19 pandemic." *Slater*, 2020 WL 4016759, at *5 (citing cases).  Any conclusory "claims that state courts are unavailable . . . without any further factual or legal allegations to support [the] claims, [are] inadequate to show that there was or is no available process in the state courts."  *Brady v. Wolcott*, No. 1:20-CV-0580, 2020 WL 3270378, at *6-*7 (W.D.N.Y. June 17, 2020).  In sum, "exhaustion requirements can (and should) be waived when relief is truly unavailable.  But waiving them here – when state courts clearly were available [just in a different capacity] . . . – would turn the habeas system upside down."  *Money*, 2020 WL 1820660, at *22.

Moreover, as noted in *Elleby*,

> This case, in fact, supplies an excellent example of the appropriateness of the exhaustion requirement.  The rule that "when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief" serves useful purposes.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999).  Recourse first to state remedies enables a factual record to be developed.  It also may afford relief to the petitioner, obviating the need for a federal-court action or federal intervention. . . . There is value to giving the New York state courts a first opportunity to evaluate such a claim, and develop a full factual record, particularly given the rapidly changing conditions in prisons and the evolving steps that prisons are taking to meet the unprecedented challenges presented by the pandemic, in general and as specifically affecting

7

[petitioner's] conditions of confinement.

*Elleby*, 2020 WL 2611921, at *5.  Therefore, it is not futile to require petitioner to complete exhaustion of his state court remedies before pursuing a federal habeas petition.

Based on the foregoing, the petition is premature and is dismissed without prejudice to re-filing one complete petition once petitioner has pursued and exhausted all the claims he wants to raise in the state courts.  *See Diguglielmo v. Senkowski*, 42 F. App'x. 492, 496 (2d Cir. 2002) ("[B]ecause the New York Court of Appeals has not yet had an opportunity to address [the petitioner]'s federal claims, comity requires that we allow that court an opportunity to do so.  Accordingly, we dismiss [the petitioner]'s petition without prejudice. This will allow [the petitioner] to pursue any procedural options available to him in New York state court, and then take whatever steps may be appropriate to return to federal court if necessary.") (footnote omitted).[4]

As an aside, petitioner's complaints about facility policies, which do not impact the fact or length of confinement, are more appropriately brought pursuant to 42 U.S.C. § 1983.  *See Peralta v. Vasquez*, 467 F.3d 98, 104-05 (2d Cir. 2006).  To the extent petitioner seeks to challenge the policies implemented or actions surrounding how the respondent was meeting the inmates' transfer and programming needs, he may file a civil rights action pursuant to 42 U.S.C. § 1983, which will be subject to review under the Prisoner Litigation Reform Act (PLRA) of 1996.

## IV.    CONCLUSION

---

[4]  The Court notes that, if petitioner's claims are unsuccessful in state court, a subsequent habeas petition should not run afoul of the "second or successive petition" limitations because this petition is being dismissed for failure to exhaust and not on the merits.  *Burton v. Stewart*, 549 U.S. 147, 155 (2007) (citing *Slack v. McDaniel*, 529 U.S. 473, 478 (2000)).

**WHEREFORE**, it is

**ORDERED** that the Clerk respectfully update the caption on the docket to reflect that Gerald Jones is the proper respondent; and it is further

**ORDERED** that the petition, (Dkt. No. 1), is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust available state court remedies; and it is further

**ORDERED** that no certificate of appealability (COA) shall issue in this case because petitioner has failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2).[5]  Any further request for a COA must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is further

**ORDERED** that the Clerk is directed to serve a copy of this Order on petitioner in accordance with the Local Rules.

**IT IS SO ORDERED.**

November 19, 2020
Albany, New York

Gary L. Sharpe
U.S. District Judge

---

[5]  *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

9